Your Honor, it's the second case of the morning, call 212 of 1122, Young America's Foundation v. Doris A. Pistole, Revocable Living Trust, and all. On behalf of the athlete, Mr. Wickton H. Briskey. On behalf of the athlete, Mr. Jeffrey Kramer. Thank you. Thank you, Justice Foster. All right, then are we ready, Mr. Briskey? Thank you. Long time no see, Mr. Briskey. Good morning, Your Honors. I'm Whitman Briskey on behalf of Young America's Foundation. My associate, Amy Parrish, is also with me at the council table this morning. Your Honors, this is an interlocutory appeal under Rule 304A of the dismissal of several counts of the plaintiff's amended complaint based on the trial court's finding that the statute of limitations on those counts expired during the pendency of YAF's original case, which was voluntarily dismissed by YAF and refiled within the one year provided by Section 13217. I apologize to Justices Hudson and Shostak who have heard some of this before, but the defendants must demonstrate a few things before they can win. They must demonstrate all of them. First, that YAF was a foreign corporation required to register with the Secretary of State. That was one of the issues discussed in the first oral argument? It was. They are a foreign corporation, but the issue is were they required to? Were they required to register. Second, whether the failure to register is a matter which can be cured by the subsequent registration of YAF. And third, they must demonstrate that Section 13217, the savings statute, does not apply where the statute of limitations, the original statute of limitations, expired during the pendency of the prior action which was filed by an unregistered corporation. And when we say this is a 304A, what, if anything, is remaining? There was one other count, or perhaps two, but there was at least one other count of our complaint which was based on a longer statute of limitations, so the trial court did not dismiss that count. Thank you. But in addition to those issues, and I'll come back to them if we have time, in addition to those issues, this case presents even greater impediments to the defendants than the prior one. During the statute of limitations and the closed-door statute upon which the defendants are reliant, 805 ILCS 5-1370 provides specifically that a foreign corporation is not prevented from defending any action in any court of this state. So once they filed their counterclaim, YAF, even if it had no right before, then had a right to defend itself, including the case law which we cited provides, including the filing of a counterclaim. But that statute says defend themselves, not bring an action. That's correct, but once the counterclaim was filed, it was as if the defendants now had brought an action against us, and we have a right to defend ourselves. Is there a case law that specifically holds that, or is that just your interpretation? No, there is a case which says that, among other things, the defendant can raise counterclaims in response to a claim by another party. So if your case is dismissed, then their counterclaim becomes the case? Becomes the case. So you can file a counterclaim? Right. For their counterclaim? Correct. Can you file a counterclaim to their counterclaim? And you can defend, but do you have any case law that says that you can continue to do your primary litigation? Defending, I can understand defending. You can't be left, you know, weaponless. But can you then also pursue your claim that preceded the counterclaim? Well, in fact, we filed actually an amended complaint after they filed their counterclaim. That would be a counterclaim unless you started the party. So let's go back to your starting the party. Can you now proceed with your action, or can you only defend the counterclaim? And do you have any authority for that? If, and we'll get back to this, but if our original complaint was a nullity, then it doesn't exist. And then they file their counterclaim. That initiates an action. There is no prior party. Now, our amended complaint, which was filed subsequently, becomes our counterclaim, our defense. They invited you to the party. They invited us to the party, or they waived the objection. I mean, in a sense, it's a waiver, too. I mean, how can they go ahead and file a counterclaim and proceed on their counterclaim when they're saying, no, this whole case is a nullity? I don't want to say it has some logical, intuitive appeal, but you have case law that's holding it. The case law that I have is based on the statute that says that you can file, you can defend against an action. And the case law which says, and I wish I could put my finger on it, but it's in the brief that says you can file a counterclaim as part of your defense. Well, it would all come back full circle to where we were on the last argument. We talked about the profit and non-for-profit. Where would the prejudice be if they filed a counterclaim? They certainly knew of the action. They're not being prejudiced by the late statute. That's right. Or the lateness with respect to the statute of limitations. Or with respect to the lack of registration. The lack of registration affects these defendants not at all. There is a defendant in this case, or at least a party in this case. The Illinois Attorney General is a party to this case because it relates to a charitable trust. And they chose not to participate in the briefing or the argument of this case. And certainly if the state has no interest in making sure that YAF had registered as a foreign corporation, the defendants in this case really have suffered no injury, no prejudice by the fact that YAF was not registered at the time the original case was filed. So now is this counterclaim argument an alternative to the main argument in the companion case? In that case, obviously, it turned on curability. You're saying irrespective of curability, the fact that they filed a counterclaim brings us to the table even if we committed a faux pas initially. Is that sort of what you're saying? That's correct. I mean, even if it's not a curable defect, the fact that they filed a counterclaim in effect makes that, cures the defect themselves, and they can't now be seen to argue that that does not apply. Why did YAF then submit to the registration requirement? Two reasons. First, Judge French had determined that we should have, and what we thought was an excess of caution. Perhaps the court disagrees, but we felt we should. But secondly, YAF was then in the process of developing chapters in Illinois and, in fact, had its first chapter in, I believe, October, right after we registered to conduct affairs in Illinois. And, in fact, this registration process that you pursued took less than a month? Less than a month, yeah. Okay. You know, in the first argument, you discussed stay versus dismiss, you know, the closed order concept. Right. I think, as Judge Hudson mentioned a second ago, I think the key issue is whether this is a curable defect. And there is a lot of case law within Illinois, including in this district, which provides that a plaintiff who fails to register can cure that, and that the proper remedy is not a dismissal, but merely a stay until the corporation can register, or in the case of failure to pay franchise tax, until the tax is paid. And that just goes to show the interest of the state in making sure that the laws are, the corporate laws are obeyed. This is the, now they are. We talked about this, and I didn't ask you in the first, and I'm asking these questions because I know, Counselor, you were there. I saw you sitting there, so you have a bit of a rebuttal opportunity, if you will, as opposed to your main argument. But we talked about the intent of the legislature, because you're kind of talking about that, touching on that with respect to the closed door. What is your interpretation, or what do you feel the intent of the legislature was with respect to requiring the registration? I mean, was there intent to foreclose actions by plaintiffs who were non-registered corporations or non-for-profit corporations? Well, the Illinois courts have not found that to have been the legislative intent. Again, you know, I have not talked to the legislators who passed the laws. These things developed over a period of time. The closed door statutes were all passed sort of in the same era, but everybody was doing it around the country. And I think the idea was to enforce the corporate law. It wasn't to deprive plaintiffs of valid claims and, in effect, protect defendants who may be liable on these claims. But rather, as I say, to provide an incentive for corporations to comply with these laws. Again, Counsel, why should the Not-for-Profit Act be interpreted differently than the For-Profit Act, which allows curability? Well, Your Honor, the only difference in the closed door statute, and there are three of them in Illinois, one relates to for-profit corporations, one for not-for-profit corporations who don't register, and third for for-profit corporations that don't pay franchise taxes. And the only difference in the language is the trigger language. What triggers the closed door statute? But once the trigger is there, whether it's the failure of a not-for-profit to register, the failure of a for-profit to register, or the failure to pay franchise tax, the language is the same, that the corporation shall not maintain an action in the state of Illinois. So there's no reason that the cases which apply to the tax cases and the for-profit cases should not also apply to the not-for-profit. The language with respect to that part is identical all the way through. And therefore, we should hold that the not-for-profit have the same right to cure as the profits under the case law. Correct. Correct, Your Honor. And there's an additional factor in this case. And that is that although the defendants raised this failure to register by way of affirmative defense, they never brought a motion. And I think the American... What kind of motion? I'm sorry? What kind of motion? A motion to stay or dismiss. And so, in fact, until Judge French ruled as she did in the other case, the parties were following motion practice, conducting discovery, preparing for trial, and moving along on the case. Are you submitting there's forfeiture? I believe that's correct. I think the Americo case requires, not a forfeiture, a waiver. The Americo case requires the defendant to bring it to the attention of the court at its earliest opportunity. And I think the reason the Americo case required that is so that the trial courts would not be wasting tons of judicial time going through all of the pretrial process when, in fact, the case should be, something should happen to the case right away, and, in fact, give the plaintiff an opportunity to cure if that really is an issue. Maybe because I wasn't here for the first argument, is there any dispute in this case that YAF was doing business or conducting affairs in the state of Illinois? Because you raised that in the brief, that they may not have been because it was too disjunctive or too sporadic. Yeah, there is a lot of case law in Illinois which dates back many years, both within the Illinois Supreme Court, the appellate courts, and the U.S. Supreme Court, relating to the definition of what doing business or transacting business is. And it relates to the for-profit cases. There aren't not-for-profit cases, but the for-profit cases. And those cases were decided prior to the insertion by the Illinois legislature, with certain exceptions in the Illinois for-profit corporation statute. And so we are relying on those cases, that case law. And they say two things. First, that interstate activity is not transacting business within Illinois, if you do it from interstate. And virtually all of what YAF did was that. And secondly, that disjointed or not continuous activity is not transacting business. And that is, and the remaining four instances in ten years seems to me to fall within that. Counsel, isn't the trend, though, away from requiring a physical presence in the state? I mean, I'm not exactly sure you're saying interstate activity. And again, we talked about this earlier. It would seem to me that by having continuous and purposeful efforts to basically promote the mission of the plaintiff in this case, you're conducting activities. I mean, I have a hard time having all of these things going on and saying, nope, we're not really conducting any activities in the state of Illinois. What's the mission, what's the purpose, then, for having these meetings here? Well, the analogous case would be soliciting orders from out-of-state for an out-of-state business. And that has not changed. There's no change that a for-profit corporation soliciting business from out-of-state does not subject you to. You might want to look at a recent case in the district last year that was a little bit of a change in the law. Well, I apologize. I missed that one. But it depends on the... Because I was the author, you might want to take a look at that. I'm sure it was brilliant. It had some intuitive appeal. Oh, no. But I think even if Your Honors... Your Honors don't even have to reach that issue. Right, we don't. Because if this is curable or if Section 1327, 217 applies, or if they waived it by waiting too long, or if they waived it or invited us to the party by filing a counterclaim, if any of those things applies, Your Honors never have to reach that question. Likewise with the constitutional issues, correct? Absolutely, the constitutional issues. If there are no other questions... I don't believe there are at this time. You'll have an opportunity for a rebuttal. Thank you, Your Honor. Thank you. Mr. Cabe. May it please the Court, Counsel, Jeffrey Cabe on behalf of Defendants Appellees, the Doris Pasol Revocable Trust, and David and Mark Capello. Obviously, we've got a lot of ground to cover, but I think one of the important foundations for the Court to have is an understanding of the three different, as Mr. Briske called them, closed-door statutes. There's one registration portion of the Not-for-Profit Act, and then the Business Corporation Act, which deals with for-profit corporations, has a registration provision as well as a tax delinquency provision. They do share some similar language, as Mr. Briske pointed out, but the statutory backdrop for each of those is different. So the tax delinquency portion of the Business Corporation Act actually has a savings clause that says that if you have been suspended for failure to pay your taxes, you can still file your claims even though the statute of limitations has passed. What do you think the intent or the purpose is behind that? Well, it's, you know, as Judge Sheen stated in our case, it's a very different matter for a corporation to come in. It's been properly registered in the state, and it's just behind on its taxes to lose out on its claims. Or it would be unfortunate for the state to lose out on having its business in the state. And for the state to lose out on taxes as well. Then for a corporation which has never been registered, you know, I think just from the facts stated in the complaint and the facts stated in Kimberly Begg's affidavit from YAF, those admissions, I think it's clear that YAF has been conducting affairs in Illinois for at least nine years, eight or nine years prior to filing, you know, filing of the original case in this matter. And if you look at the tax delinquency statute, that's the, for the Business Corporation Act, all of the cases that YAF cited that show that a statute of limitations can be overcome with a later, later count filing, those all fall under the specific safe harbor of the tax delinquency statute. The cases that fall under the registration statute for the Business Corporation Act, those did not involve a statute of limitations. I think if you look at them carefully, you'll see that those were just, just like in this case where there's a breach of fiduciary duty claim still pending at the trial court, and that's why we have the rule 304A. That was not dismissed with prejudice because it has a five-year statute of limitations instead of the shortened six-month for being in probate. Counsel, obviously you think we should treat the two different, the profit Corporation Act and the not-for-profit differently in terms of curability, correct? Both in terms of curability and in terms of the conducting affairs and transacting, and transacting business. Let me ask you this. Are there some public policy issues involved? How do you respond to the argument that imposing a permanent disability on a corporation that was not technically in compliance initially could utterly defeat a potentially meritorious claim and be a windfall to a defendant? Is that a concern, you know, as a matter of policy? Well, I mean statute of limitations by their very nature cut off claims, and when the legislature was setting up the registration requirement, there are lots of things that they could have done as far as what types of consequences. They could have just a fee, you know, an extra fine. If you're late, then it's $100 per year. Initially they were within the statute, were they not? Initially they were within the statute, correct? Well, the original filing of the original case was filed before the statute of limitations expired. So their argument is as a matter of public policy, since they did comply with the statute of limitations, why should they be ousted where if they were a profit corporation, they wouldn't have been ousted? Because they weren't allowed to maintain that lawsuit. You know, that was the penalty, that was the consequence that the legislature chose was you cannot maintain a lawsuit. They didn't choose an extra $150 a month fine or any of those other consequences that they could have chosen. They said if you haven't registered, you cannot maintain the lawsuit. Right, but if it's curable, why shouldn't it be laid back then? Well, I think that's the question. I mean that's the question for the court is applying the plain language of the statute and saying is this curable? And clearly, you know, our position is that if they were not able to maintain an action, then it's not, there's nothing in the statute that allows that to relate back. And when you look at the legislature actually went in and specifically added a safe harbor. Out of the three cases, they only added a safe harbor to one, the tax delinquency provisions of the Business Corporation Act. They could have added a safe harbor to all three, but they didn't. They did not add a safe harbor to the registration provisions of the Non-For-Profit Act or the Business Corporation Act. They only added the statute of limitations safe harbor to the tax delinquency provisions of the Business Corporation Act. And so I think when you look at the context of that, when you add a safe harbor to one out of three similar language statutes, I think it's clear that the intent is that there is no safe harbor on those other two. And you're obviously going by the plain language of the statute, right? And just looking at the plain language of the statute, if you're not allowed to maintain an action, and that's what Judge Sheen found as well, if you're not allowed to maintain an action, then the statute of limitations has passed. And, I mean, that's what statute of limitations do. Are you accepted to unearth any legislative history? Or are you aware of any legislative history? I'm not aware of any legislative history on this issue, no. Mr. Keeby, why was a motion to dismiss not brought? And since it was not brought or a motion stayed, isn't there a waiver, as your opponent points out? Actually, the reason we didn't file a motion to dismiss was we didn't realize the error until after we had filed our ‑‑ the error in terms of the YF not being registered until after we had filed our original motion to dismiss, and we were getting very close to the deadline for our answer. In the first two complaints in the original case, the verified original complaint and verified first amended complaint, YF falsely stated that they were registered to do business in Illinois. So that statement was in their verified complaints that we were responding to with our answer. So you relied on those. So we relied on those originally, and it was only at the last minute before we filed our answer that we unearthed that they were, in fact, not registered, and, therefore, we raised the defense of lack of capacity. And that was ‑‑ well, where did the counterclaim fit? Is this the answer you're talking about? That was the original case, not the current case. So now we're after that, right? This action is slightly after the first one. Yes, and this is the subsequent action. And so the counterclaim was filed in that original action, but that original action also had, and this kind of goes to the waiver argument that they made with respect to the counterclaim, that original action also had a claim for breach of fiduciary duty, and we were entitled to bring a counterclaim just based on their claim for breach of fiduciary duty, which, as I said in this case, is still currently pending in, you know, in the circuit court, in the trial court. So the, you know, I don't see how this court could rule that because we brought a counterclaim based on a claim that even in this case has not been dismissed, we waived that argument. All right. Well, then let's talk about the issue of the counterclaim. If a counterclaim is raised, certainly anybody, individual or corporate entity, has the right to defend. What then does that do to their action or their amended action, as the case may be? Well, I mean, a plaintiff in that situation is entitled to defend that claim, but if they want to add additional claims to their case, they need to go through the regular process. Do you have any authority for that other than statutory provisions? I mean, do you have any case law that says they can't maintain their original action? No case law that says they can't maintain their original action, but there's no case law that we found or that YAF cited that indicates that if a counterclaim is filed, it kind of launders the, you know, the misfiled or the claims. There's no provision allowing for a plaintiff to respond to a defendant's counterclaim with claims that have passed the statute of limitations. Oh, I see. So you're saying should we agree with you and not allow him to proceed in your counterclaim stance, which then becomes the main claim, he can't counter with these arguments. Correct. Correct. And the court also needs to be aware, this was the previous case, and YAF cited no precedent that would require, I mean, they dismissed their case and they filed a new case. It's the current case that's on appeal here, not the previous case. Their entire waiver argument is based on something that happened in the previous case, and they made no argument in no showing the precedent saying that a supposed waiver in the previous case, even if it was proven, would carry over to this case. And this is the case, though, that they dismissed without prejudice? Well, this is the case that was refiled after they dismissed the previous case under 1009. And when was it filed? What time period? So this case was filed in October 12, 2011. So that was after, you know, months after the statute of limitations expired and about a month after they had dismissed the previous case. But within, obviously, within 12 months. But within the one year, yeah. Why would this case not relate back in respect to the statute of limitations? Yeah. You know, when they refiled the case, we still have the same defenses that we would against the original claim. And essentially the lack of capacity in the statute of limitations. I mean, if it is curable, then it's curable, and I guess relation back wouldn't be an issue. But if it's not curable, they can't overcome that by dismissing a case, which should have been properly dismissed under the statute of limitations on the previous case. They can't just. But the previous case, when they originally filed, they were within the statute of limitations. When they originally filed, they were within the statute of limitations. Correct. So now they refiled. Even if we find, well, if we find that it was curable, then you're saying we don't even need to adjust the statute of limitations because then it wouldn't. Yeah. I mean, if you find that it was curable, then clearly they're cure. Then the curability would relate back. If it's not curable, then 217 doesn't do anything for them. Correct. Yeah, absolutely. Absolutely. But even if this is not curable by their obtaining this certification or registration, doesn't the dismissal without prejudice take into account that a statute of limitations may pass, but as long as that first case was filed in that period of time, this is kind of the hidden extension of the statute of limitations? Well, you know, what we argued and what Judge Sheen found was that the, that original case was not properly before the court. Right. Because the conclusion was that under the registration, the consequence of the registration provision and the failure to register, was that during the entire pendency of that action until months past the statute of limitations expired, that they were not allowed to maintain an action. So you're saying it's a nullity, ergo whatever happens after that can't bring them into the statute? Right. You know, essentially that original case, I mean, essentially Judge Sheen was kind of making a ruling in this case and the original case for the consequence of the failure to register in the statute of limitations. So it can't relate back. Absolutely. If you have a question. I don't. Okay. I wanted to address for one moment as well the difference in terms of the intention to treat the Not-for-Profit Act registration, conducting affairs and transacting business, the concept of transacting business differently. I think if we look at both from a statutory standpoint and kind of a rationale behind it, the Business Corporation Act has specific exceptions in there saying these things do not constitute transacting business. And I think, you know, it's kind of reminiscing back to first-year constitutional law. I mean, there's the Commerce Clause, Dormant Commerce Clause. There's a whole slew of federal cases on specifically interstate commerce and the things that states are not allowed to regulate and when states are allowed to step in and regulate interstate commerce. And if you line those up, it's clear where the legislature got those from in terms of the exceptions to the registration requirement for the Business Corporation Act because those are all of the Commerce Clause interstate commerce provisions. So you talk about the intention to treat conducting affairs and transacting business differently. Well, it's clearly there in the statute because there's a long list of exceptions in the Business Corporation Act that don't apply to the conducting affairs analysis. And I think it's clear where they came from when you actually read through them and see that this is just black-letter Commerce Clause case law. But that would be relevant to conducting business for money versus not-for-profit, wouldn't it? Right. That would be relevant to, you know, if YAF was running a website and selling things into Illinois consumers, you know, that's kind of an interstate commerce type of action. But we're talking about, you know, working with student organizations, sending them materials, soliciting donations. I mean, all of those things that YAF admitted to doing, that's not commerce. That's conducting affairs. Yeah, what about his argument, though? And we, you know, built him extensively on the continuous activities they had in here and their mission here. What about his argument, well, since we really didn't have a physical presence in here, you know, we can't be held to have really conducted activities? Well, you know, the statute doesn't say conducted affairs from in Illinois. It says conducting affairs in Illinois. And I think clearly all of these events and programs that YAF was putting on, they were putting on in Illinois. And, you know, you kind of make an analogy to the Charitable Trust Bureau registration. The Illinois Attorney General Charitable Trust Bureau is permitted to require out-of-state charities who never set foot in Illinois to register before they solicit Illinois donors. The Secretary of State has that same right as laid out in the not-for-profit registration provisions. So I don't think that's, let me see. So, you know, I think when you look, I mean, when you go and deliberate and make the decision, it's really going to come down to just a plain reading of the statute because you can really, I think, set aside, set aside all the case law because it really does deal with different, you know, different statutes and different provisions and the safe harbors that don't apply to the not-for-profit act. And so we would ask you to affirm the trial court's decision dismissing claims one through three. Thank you. Thank you. Mr. Breschke. Thank you, Your Honors. Just a few brief responses. The case that I was struggling for before, Holland v. Bly Construction, 61 Illinois 2nd, 258, is the case that specifically said that defending an action could include the filing of a counterclaim. Our safe harbor is Section 13217, which is the saving statute. And that's the safe harbor which is necessary. Well, Mr. Cady pointed out that the statute is clear, the Blackwater Law, the statute is clear. Therefore, we don't need to go any further in interpreting the statute, i.e., legislative intent. Why is that important? Again, the three statutes all have the same language, shall not maintain. And this Court is not hearing this in a vacuum. That shall not maintain language in the other two cases has been interpreted and has been interpreted as being can't continue, that there's a stay, that there's an opportunity to cure the defect. And there's no reason why it should be interpreted differently in this case. And shall not maintain, I think, it doesn't say shall not file. It says shall not maintain. And that maintain language is the language that the courts have picked up on in terms of allowing the cure. You had also pointed out that they didn't file a motion to dismiss, and therefore there was waiver. But your opponent pointed out, Mr. Cady pointed out, that your somebody who was filing a plea inadvertently stated that you were registered. So he relied on that, didn't he? But how could there be waiver when there was reliance on your brief? That's true. It's not simply the failure to file before he filed his answer. He could have filed a motion to dismiss or to stay at any time. It's not required to do that before he files his answer. And he could have raised that issue in some other way so that the court could have had an opportunity to deal with it. Well, didn't that first action get dismissed shortly after all of this happened? I mean, how much time did he have? Well, he filed his answer in, I believe, January of, that would have been 2011. And the case... Did you say it was in March? No, that's prior to the case. They filed their answer and counterclaim in January of 2011 or maybe the first week of February. And the case was voluntarily dismissed at the end of August or beginning of September of that year. So there was about seven or eight months during which we conducted substantial discovery. The trial judge in the original case never even addressed this issue. And the voluntary dismissal, Section 2-1009, requires by its very terms you can't use it unless there is an action pending. And if there was an action pending for purposes of 2-1009 and there was no objection from the defendants to the dismissal, then there was an action pending for purposes of 13-217, which is the saving statute. The language is identical between those two statutes. And as I pointed out in the prior argument, Section 13-217 can be used even when a federal court dismisses an action for lack of jurisdiction. This court has held, this district has held that in these kinds of cases, these closed-door statutes, the trial court does obtain jurisdiction. So it can't be a nullity. The trial court obtained jurisdiction. If it had never been raised, it would have been waived, and the judgment could not have been attacked collaterally. If it's a nullity, it can't be waived. It can't be attacked collaterally. And that has simply not been the way the law has developed in Illinois with respect to these cases. If the statutory authority did say commence litigation, you would not be having this ground to stand on, would you? If it said commence, it would be a different case. I don't... That would be begin, commence, so you'd be in a very slender read. Well, I don't know. I don't know the rest of what would exist at that time, but certainly it would change the case to my detriment considerably. No questions? Thank you, Your Honor. Thank you. All right. Thank you for arguing it this morning, counsel, both of them, even though I was not here for the first. But we'll listen. We will take the matter under advisement. We will issue a disposition in due course, and we will stand in recess to prepare for our next, I believe, last panel.